IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SANDRA C. R. o/b/o Y.E.O.C., a minor,

                    Plaintiff,

        v.                                    Civil Action No.
                                              5:20-CV-0923 (GTS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
250 South Clinton St., Suite 210      SUSAN HURLBURT, ESQ.
Syracuse, New York 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                JAMES J. NAGELBERG, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that her minor son, Y.E.O.C. ("claimant"), was not disabled at the relevant times and, accordingly, ineligible for the supplemental security income ("SSI") benefits for which she applied on his behalf.  The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Claimant was born in July of 2014, and is currently seven years of age.  He was two years old at the date of his mother's application for benefits.  Claimant was measured between three feet in height at the date of his application and three feet and seven inches in August 2019, and has weighed between twenty-eight and forty-two pounds.  Claimant resides in a house in Syracuse with his mother and father.

Claimant has been at various times during the relevant period in an early childhood intervention program and pre-kindergarten, and at the time of the ALJ's decision was beginning kindergarten.  He is subject to a

Section 504[1] plan for kindergarten, which includes modifications and accommodations such as positive reinforcement, special seating arrangements, a modified curriculum, visual cues, checks for understanding, refocusing and redirection, access to water and the nurse's office bathroom as needed, breaking of materials into smaller segments, and a separate testing location with breaks.

Physically, plaintiff alleges that claimant suffers from asthma, sensory issues (particularly to food textures), gastrointestinal issues including constipation, and motor skill delays.  During the relevant period, claimant has been treated for these conditions by professionals at Bright Futures Pediatrics and the Upstate University Health System.

Mentally, plaintiff maintains that claimant suffers from attention deficit hyperactivity disorder ("ADHD") that causes behavioral, attentional, and hyperactivity issues, speech and language delays, and anxiety.  During the relevant period, claimant has been treated for these conditions by therapist Leighanne Hibbard, Dr. Mihai Simonescu, and Dr. Louis Pellegrino.

Claimant has been prescribed several medications over time including, though not limited to, Adderall, Hydroxyzine, Symbicort, and Singulair.

---

[1]    29 U.S.C. § 701 *et seq.*

Plaintiff reported during the administrative hearing held to address

her claim for benefits on claimant's behalf that her son is constantly running

around their home, likes to play with balls and toy cars and trucks (primarily

by himself), likes to ride his bicycle, does not sleep consistently because of

nightmares, does not like to go to the bathroom by himself out of fear,

requires the lights to be on in the house, and needs help for self-care

activities such as getting dressed, brushing his teeth, and wiping himself

after a bowel movement.  Plaintiff reported, however, that claimant is "a

perfect cleaner" and organizes all of his monster truck toys.  Plaintiff

additionally noted that claimant likes to watch cartoons, but often walks

away from them to play, and likes to have the volume on the television set

loudly enough that he can hear the cartoons in another room.

II.    <u>PROCEDURAL HISTORY</u>

   A.    <u>Proceedings Before the Agency</u>

Plaintiff applied for Child SSI payments under Title XVI of the Social

Security Act on February 16, 2017.  In support of that application, she

alleged a disability onset date of October 1, 2016, and asserted that

claimant is disabled based on speech language delays, motor skill delays,

and asthma.[2]

A video hearing was conducted on July 15, 2019, by administrative law judge ("ALJ") Melissa Hammock, to address plaintiff's application, at which plaintiff appeared without assistance after affirmatively waiving her right to representation.  Following that hearing, ALJ Hammock issued an unfavorable decision on October 2, 2019.  That opinion became a final determination of the agency on June 10, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Hammock applied the familiar three-step evaluation procedure for assessing whether a child claimant meets the standard for disability under the regulations.  At step one, she found that claimant had not engaged in substantial gainful activity during the relevant time period.  At step two, ALJ Hammock found that claimant suffers from severe impairments that impose more than minimal limitations on his functional abilities, including developmental coordination disorder, asthma, sensory processing dysfunction, oppositional defiance disorder, and

---

[2]    Subsequent to the filing of plaintiff's application, claimant was also diagnosed with ADHD and oppositional defiance disorder.

ADHD.

At step three, ALJ Hammock examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that claimant's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the regulations, specifically considering Listings 103.03, 112.04, 112.08, and 112.11. ALJ Hammock went on to find that claimant also did not functionally equal any of the childhood listings, determining that he has less than marked limitations in all of the six relevant domains of functioning.

Based upon these findings, ALJ Hammock concluded that claimant is not disabled.

C.    This Action

Plaintiff commenced this action on August 13, 2020.[3] In support of her challenge to the ALJ's determination, plaintiff raises two arguments, contending that (1) the ALJ erred in affording only partial weight to the opinion from claimant's early childhood intervention teacher, Kathleen

---

[3]    This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Porillo, and (2) the ALJ erred in concluding that claimant had less than marked limitations in the domains of functioning related to attending and completing tasks and interacting and relating with others.

Oral argument was conducted in this matter, by telephone, on November 10, 2021, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are

7

conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    <u>Disability Determination: The Childhood Disability Evaluation Process</u>

An individual under the age of eighteen is disabled, and thus eligible

for SSI benefits, if he or she has not engaged in substantial gainful activity and has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(C)(i); *see Hudson v. Astrue*, 1:06-CV-1342, 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits).

The agency has developed a three-step protocol to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).  The first step of the test requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then by statute and by regulation, the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in

combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1.  *Id.*  Equivalence to a listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment.  Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).

Those domains include (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established with the finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 112.00(C).

    C.    <u>Analysis</u>

          1.    <u>ALJ Hammock's Consideration of Teacher Porillo's Opinion</u>

In her opinion from March 28, 2017, Kathleen Porillo, a teacher for the toddler early intervention program who had been seeing claimant three times per week, two-and-one-half hours per day, for four months, opined (in relevant part) that (1) in the domain of attending and completing tasks, claimant has a "serious problem" with carrying out multi-step instructions, "obvious problems" with sustaining attention during play or sports activities, focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, carrying out single-step instructions, and waiting to take turns, and a "slight problem" with changing from one activity to another without being disruptive; and (2) in the domain of interacting and relating with others, claimant has "very serious problems" with using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, and using adequate vocabulary and grammar to express thoughts and ideas in general everyday conversations, an "obvious problem" with seeking attention appropriately, and "slight problems" with playing cooperatively with other children, asking permission appropriately,

following rules, and interpreting the meaning of facial expressions, body language, hints, and sarcasm.[4]  AT 218-19.  Notably, plaintiff's argument challenges the ALJ's findings in only these two domains.

In her decision, the ALJ afforded only partial weight to Ms. Porillo's opinion, specifically finding that, although mental health evaluations showed hyperactive movements and impulsivity that was consistent with her opinion, those same evaluations showed that claimant is extremely verbal and has social interaction skills which are inconsistent with the level of limitation in those areas outlined in her opinion, and further that her opinion that claimant has no limitations in the area of self-care is inconsistent with more recent records that his anxiety and sensory disorders affect his ability to go to the restroom and change clothes without assistance.  AT 36.

Plaintiff argues that the ALJ erred in affording only partial weight to Ms. Porillo's opinion because the reasons the ALJ provided for rejecting greater limitations in that opinion were insufficient, [5] and in failing to find

---

[4]    Claimant was only two years and eight months old at the time Ms. Porillo's assessment was written.

[5]    I reject plaintiff's argument that the ALJ's reasoning for declining to accept Ms. Porillo's findings in the domain of caring for one's self – that more recent evidence showed greater limitation in that domain than Ms. Porillo opined – impacted her treatment of the other domains.  The ALJ did not use the worsening in the ability to perform self-care to invalidate any other part of Ms. Porillo's opinion; rather, the ALJ

that claimant has a marked limitation in the domain of attending and concentrating and a marked or extreme limitation in the domain of interacting and relating with others.

As an initial matter, I note that, as a teacher, Ms. Porillo is considered to be an "other source" under the former regulations, which are applicable in this case based on the filing date of plaintiff's application. *See* 20 C.F.R. § 416.927. As a result, the ALJ was required only to consider her opinion and explain why (or why not) she found it to be unpersuasive. 20 C.F.R. § 416.927(f); *see Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (noting that, although an ALJ is free to consider opinions from "other sources," those sources' opinions are not entitled to the deference of a treating physician); *Crouch ex rel. K.C. v. Astrue*, 11-CV-0820, 2012 WL 6948676, at *8 (N.D.N.Y. Dec. 31, 2012) (Hines, M.J.) (finding no error in the ALJ's weighing of a teacher's opinion where it was clear the ALJ was aware of the correct legal standard and indicated that the opinion was inconsistent with other parts of the record), adopted by 2013 WL 316547 (N.D.N.Y. Jan. 28, 2013) (Kahn, D.J.); *Hickman ex rel. M.A.H. v. Astrue*,

---

specifically discussed whether she accepted or rejected Ms. Porillo's findings in the domains of attending and completing tasks and interacting and relating with others based on whether the opinions in those domains were consistent (or inconsistent) with the mental health evaluations documenting his functioning in those specific areas. AT 36.

728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010) (Mordue, C.J.) (finding error requiring remand where the ALJ failed to provide any rationale for rejecting opinions from the claimant's teachers).

With respect to the domain of attending and completing tasks, the ALJ's interpretation of Ms. Porillo's opinion as expressing a less than marked limitation is reasonable and adequately explained. As was discussed above, Ms. Porillo discerned a "serious problem" only in claimant's ability to carry out multi-step instructions; the remainder of her opinion for this domain expresses "obvious" or "slight" problems only. AT 218. In discussing both the opinion and that domain, the ALJ acknowledged that the record supported hyperactivity and impulsivity at this level, but noted that the record also shows that claimant will generally allow himself to be redirected, and that medication has improved his ability to concentrate to the extent that it was "fairly good" on examination. AT 32-33. Indeed, on January 31, 2018, prior to when claimant started receiving medication, Dr. Pellegrino noted that, although claimant had a short attention span, he was easily redirected, and that he had well-developed skills in speech, language, play, and social interaction, although he tended to be a bit impulsive in social interactions. AT 451-52. Because the ALJ's interpretation of the limitations opined as being indicative of a less than

marked overall limitation was reasonable in light of the evidence, it should not be disturbed under the deferential standard of review applicable in this proceeding.  *See Kaliegh O. o/b/o S.S.T. v. Berryhill*, 17-CV-0960, 2018 WL 4054098, at *6 (N.D.N.Y. Aug. 24, 2018) (Hummel, M.J.) (finding that the ALJ's interpretation of the evidence was reasonable based on a consideration of all of the evidence and thus should be upheld); *Bishop o/b/o K.M.B. v. Comm'r of Soc. Sec.*, 16-CV-1190, 2017 WL 4512163, at *6 (N.D.N.Y. Oct. 10, 2017) (Suddaby, C.J.) (noting that a reviewing court must accept an ALJ's interpretation of the evidence if it is reasonable). Because the ALJ's interpretation of Ms. Porillo's opinion as to this domain was reasonable, her finding of a less than marked limitation is consistent with the weight she afforded to Ms. Porillo's opinion, and there is no discernible error in that respect.

As to the domain of interacting with and relating to others, the ALJ provided a reason supported by substantial evidence for rejecting the extent of limitation opined by Ms. Porillo – that such limitations were inconsistent with the medical evidence of record.  Plaintiff does not appear to challenge this overarching rationale, instead focusing on an isolated sentence of the ALJ's decision which, she argues, is misrepresentative of Ms. Porillo's opinion.  Dkt. No. 14, at 16-17.  Plaintiff does not, however,

make any argument – or cite to any evidence – to contradict the ALJ's finding that Ms. Porillo's opinion in this domain is not consistent with the evidence.  Even in discussing functional equivalence generally, the evidence cited by plaintiff relates to claimant's ability to get along with others, such as whether he shared toys, how he interacted with adults and peers from a behavioral standpoint, and whether he acted violently or aggressively.  Dkt. No. 14, at 24-27.  However, the "very serious" limitations opined in Ms. Porillo's opinion all relate to use of language and conversation skills; in areas related to social behavior, Ms. Porillo opined a single "obvious" limitation in seeking attention appropriately and otherwise "no" or "slight" problems.  AT. 219.  As a result, plaintiff has not shown that the ALJ's rejection of the "very serious" limitations opined by Ms. Porillo in this domain is unsupported by substantial evidence.

The record also shows that, although claimant displayed below average language skills in October 2016 – when he was approximately two years old – by March 2017, he was noted to be making "good progress" with his language skills with therapy, and it was acknowledged that this was despite the fact that English was his second language and all his therapy was received in English.  AT 239-30, 415, 421.  In April 2017, consultative examiner Dawn Grasso-Megyeri (a speech language pathologist) noted

that, based on testing, claimant's expressive and receptive language skills were developing within normal limits, and his speech intelligibility was good at 80% intelligibility for English. AT 411-12. By January 2018, claimant was noted as having excellent speech and language skills in both Spanish and English, as well as to be "quite verbal" and "quite conversational," very social, extremely friendly, and that he had good social interaction skills, even if he was a bit socially impulsive. AT 451-52. It should also be noted that the medical and other treatment notes after January 2018 do not appear to document any difficulty with use of language. As such, the ALJ's rejection of the "very serious" limitations opined by Ms. Porillo in March 2017 – at a time when claimant's language skills were still developing – is supported by substantial evidence due to the fact that such limitations are inconsistent with the record as a whole.

Moreover, as was discussed above, the ALJ was not unreasonable in construing findings of a single "obvious" problem and a few "slight" or "no" problems in the other listed aspects of this domain as being representative of a less than marked limitation in functioning in this domain as a whole. *See Christina B. v. Comm'r of Soc. Sec.*, 19-CV-1192, 2020 WL 5848732, at *7 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.) (finding that a teacher opinion that the plaintiff had "obvious" problems in the majority of activities in the

relevant domain did not contradict the ALJ's finding of a less than marked limitation in that domain based on the overall evidence in the record); *Golibersuch o/b/o N.R.G. v. Comm'r of Soc. Sec.*, 18-CV-0976, 2020 WL 409991, at *5 (W.D.N.Y. Jan. 24, 2020) (noting that "obvious" problems in a domain do not necessarily equate to a marked limitation in that domain, and finding that it was reasonable for the ALJ to interpret teacher statements opining "obvious" problems in some areas as being consistent with a less than marked level of limitation).

Based upon the foregoing, I find that the ALJ did not commit any error in weighing Ms. Porillo's opinion.

2.   ALJ Hammock's Findings on Functional Equivalence

Plaintiff next argues that her son's condition is functionally equivalent to a listed, presumptively disabling condition. Based on the evidence in the record, I recommend a finding that the ALJ's overall determination that claimant's condition does not functionally equal a listing is supported by substantial evidence.

In her decision, the ALJ afforded great weight to the opinion of state agency non-examining medical consultant Dr. Saeed, who, based upon a review of the record evidence available up to the time of his opinion, found less than marked limitations in all of the domains of functioning. AT 35-36.

Plaintiff does not argue that the ALJ committed error in relying on that

opinion, and conceded at oral argument that any such argument had been

waived. Additionally, as was discussed above, the evidence in the record

as a whole supports the ALJ's finding. Contrary to plaintiff's assertions, it is

clear both that the ALJ considered all of the evidence and that her ultimate

findings are consistent with the record as a whole. The fact that plaintiff

believes the evidence should have been weighed differently than was done

so by the ALJ is not a basis for remand.

Focusing on the first of the two relevant domains implicated in

plaintiff's challenge, the domain of attending and completing tasks, I note

that although the record documents some difficulties in claimant's ability to

focus and control hyperactivity, those symptoms have improved with

medication to such an extent that claimant was noted to have moderate

improvement for the duration of his pre-kindergarten school day; claimant's

physician recommended increasing his dose of Adderall at that time, but

plaintiff indicated she would prefer to wait to implement any such increases.

AT 635. Additionally, no opinion (from a medical source or otherwise)

indicates a greater restriction of functioning in this domain. The fact that

plaintiff's Section 504 accommodation plan from the 2019-2020 school year

shows that plaintiff continued to experience some difficulties with attention

and impulsivity is insufficient to establish that the ALJ's finding in this domain was not supported by substantial evidence in light of all of the evidence in the record.

As to the domain of interacting and relating with others, plaintiff's selective citation to out-of-context anecdotes from therapy session notes is unpersuasive because, when taken in context, those notes tend to show the claimant as not being violent and unsocial, but rather playacting his documented anxieties, including pretending buildings were on fire or running away from "ghosts" and "clowns" that were causing him fear, and working together with the therapist to make these fear-causing conditions go away. *See, e.g.*, AT 589, 593, 597, 603, 612, 617, 620, 622, 629. Moreover, the ALJ is correct that the record documents very little aggressive or violent behavior, and that which is documented appears more directly related to his impulsivity and excitability than to antisocial motivations. AT 291-98 (noting in his 2018-2019 Individualized Education Plan that he tended to play rough with others and required reminders to keep his hands to himself during activities), 327 (noting that claimant threw a tantrum and threw objects when his needs were not meet during an evaluation by multiple individuals), 540 (noting that claimant was "aggressive" while also in a high energy, hyperactive state in that he

repeatedly interrupted his parents and yelled at them until they answered him), 612 (noting that claimant threw objects at the therapist during a play session). Additionally, although there were instances in which claimant told his therapist what to do or, in one session, threw objects at his therapist, there is no indication that these behaviors were the result of aggressive, violent, or antisocial intentions as opposed to play behavior. *See* AT 601 (noting that claimant told the therapist where to hide when they were playing hide and seek and that he later told her there was a spider in her mouth so he pretended to take it out and throw it away for her), 606 (noting that although claimant ordered the therapist around related to fixing a spaceship toy, he later let her be "the boss" and eagerly fixed the toy when she told him to), 612 (noting that claimant threw objects and pretended he did not know who was doing it), 620 (noting that claimant initially told the therapist that he wanted to play alone but then demanded that she play with him). Even children without medical impairments can be grumpy and bossy; the question in this instance is not whether claimant was perfectly behaved in his social relations, but rather whether his overall social behavior was limited in a way that imposed a significant restriction on his ability to function at an age-appropriate level, and such a finding is simply not supported by the record here.

Plaintiff's argument also ignores the myriad of documentation regarding claimant's demonstrated burgeoning abilities to get along with others and to interact socially in a healthy way.  *See e.g.*, AT 451-52 (noting that claimant was very social, extremely friendly, and had good social interaction skills), 591 (noting that claimant offered to help the therapist and gave her food), 595 (noting that claimant was "pro-social" during the session), 597 (noting that claimant indicated that, in playing a game about the room being on fire, he wanted to help his therapist and keep her safe from the fire, and that he was reluctant to leave the session when it was over, but there is no indication he threw a tantrum or acted inappropriately when made to leave), 622 (playing imaginative game cooperatively with the therapist).

Additionally, as was already discussed, the record shows that, although claimant experiences some difficulties with language, he has greatly improved with therapy such that he has good skills using both English and Spanish.  AT 411-12, 415, 421, 451-52.  Overall, while the record documents that claimant experiences some symptoms and limitations related to his ability to function as a result of his impairments, the ALJ's finding that they do not rise to the level of a marked or extreme limitation in any domain is supported by substantial evidence.

Finally, as to the parties' reliance at oral argument on the court's decision in *Johnson v. Colvin*, 15-CV-0476, 2016 WL 5394713 (N.D.N.Y. Sept. 27, 2016) (D'Agostino, D.J.), I find that, although the circumstances of that case are not precisely identical to those presented here in that it appears that ADHD medication provided even greater reduction in symptoms of impulsivity for the plaintiff in that case than it did for claimant here, that case is still supportive of the recommended outcome in this case. As was already discussed, a low dose of Adderall was noted to provide moderate improvement in claimant's symptoms to the point where he was able to attend pre-kindergarten sessions, and claimant's physician recommended increasing that dose.  Accordingly, although claimant's symptoms might not have been as controlled by medication as were the plaintiff's symptoms in *Johnson*, the evidence here similarly does not support accepting the more limiting restrictions assessed by claimant's teacher that were based on his functioning prior to plaintiff being medicated for his condition, given the evidence of improvement in symptoms from that medication.  *Johnson*, 2016 WL 5394713, at *6.

Based upon the foregoing, I recommend that plaintiff's functional equivalence argument be rejected.

IV.   SUMMARY AND RECOMMENDATION

24

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge of the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 17) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     November 12, 2021
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge